**Ravi KUMAR, Plaintiff,**

v.

**John G. FORD, Defendant.**

No. 85 Civ. 5384 (DNE).

United States District Court,
S.D. New York.

June 17, 1986.

35

Beldock Levine & Hoffman, New York City, for plaintiff; David S. Korzenik, of counsel.

Ober, Kaler, Grimes & Shriver, New York City, for defendant; George J. Koelzer, of counsel.

OPINION AND ORDER

EDELSTEIN, District Judge:

This is a diversity action for a money judgment based on three alternative theories: breach of contract, account stated,

and goods sold and delivered. A default judgment was entered in this Court on January 7, 1986. Plaintiff sought to execute on the judgment in the District Court in Maryland and on or about March 26, 1986, a Writ of Garnishment was served upon Maryland National Bank restraining defendant's bank account.

Defendant seeks to vacate the default judgment and to dismiss the action based on improper service of process. The motion is granted insofar as it seeks to vacate the default judgment, and is denied to the extent that it seeks to dismiss the action.

## BACKGROUND

Plaintiff, Ravi Kumar ("Kumar"), is an expert, collector and publisher in the area of fine art from India, Nepal and the Far East. Kumar is a citizen of India and maintains a residence in New York City. Defendant, John G. Ford, ("Ford") is a collector of fine art from India, Nepal and the Far East. Ford is a resident of Baltimore, Maryland.

On April 8, 1984, Kumar and Ford met at the home of Mr. and Mrs. H. Zarember in New York City. At the meeting, Kumar showed Ford various objects of oriental art from his private collection. Ford selected thirteen pieces valued at $100,500 which he took into his possession. The specific objects and the requested prices were summarized in a memorandum dated April 8, 1984 handwritten by Ford ("April 8 Memorandum"). In June of 1984, Ford took from Kumar another piece of work, a Basholi painting, valued at $22,000. Ford contends that all pieces were taken on a consignment basis only. Kumar contends that all pieces were sold to Ford.

By check dated October 1, 1984, Ford paid Kumar the sum of $22,000. Ford contends that this check was payment for certain of the art objects specified in the April 8 Memorandum. Kumar contends that the check was in full payment for what he considered to be the separate transaction concerning the Basholi painting.

Kumar alleges that he sent Ford an invoice dated May 1, 1984, for the art originally taken by Ford. The invoice specifically refers to the April 8 Memorandum as a purchase agreement. Kumar claims that Ford held the invoice for over eight months without objection. Ford contends that he never received the invoice from Kumar.

On October 5, 1984, Ford allegedly returned to Kumar personally at Mrs. Zarember's gallery, two of the objects included in the April 8 Memorandum. These objects had a total price of $16,000. Ford states that he received no objection to the return of the objects from Kumar. Further, Ford claims that he saw the items displayed for sale in the gallery in October, 1984.

By check dated January 1, 1985, Ford paid $50,000 to Kumar. Kumar views this as a partial payment for those art objects specified in the April 8 Memorandum. Ford views this as full payment for only some of the objects mentioned in the April 8 Memorandum. In a letter dated January 30, 1985, Ford indicated that he would be returning additional objects because his financial position was such that he could make no more payments.

Kumar stayed in Ford's home on March 10 and 11, 1985. During this stay, Ford allegedly reiterated to Kumar his decision not to purchase the remaining objects specified in the April 8 Memorandum and to return them to him. On April 11, 1985, Ford delivered to Mrs. Zarember the Basholi painting which he had received in July of 1984, and three objects specified in the memorandum. The three additional pieces were valued at $13,500.

Mrs. Zarember signed a letter dated April 11, 1985, acknowledging receipt of these items. In this letter Ford stated that he had held these items on consignment and had decided against purchasing them and was therefore returning them. In Ford's view, delivery of these items to Mrs. Zarember constituted the return of these items to Kumar due to the business relationship between Mrs. Zarember and Kumar.

Kumar, however, views the delivery of the selected items to Mrs. Zarember as only

an attempt to return the items. Kumar contends that the pieces have not been returned to him nor does he agree to rescind the sale or settle the outstanding balances. He views the pieces of art as having been sold to Ford. The pieces have remained at Mrs. Zarember's gallery.

In a letter to Kumar dated April 18, 1985, Ford itemized the art objects which he had delivered to Mrs. Zarember. In the letter he states the total value of the objects "returned" was $51,500 which is $1,000 more than Kumar contends is owed to him by Ford.

Defendant was served with process pursuant to Rule 308(4) of the New York Civil Practice Laws and Rules which allows service by affixing a copy of the summons and complaint to the door of defendant's dwelling house and mailing a copy to his last known residence. This is known as "nail and mail" service.

Plaintiff also mailed a copy of the summons and complaint and acknowledgment of service to Ford at his residence pursuant to Rule (4)(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. Defendant neither served nor filed an answer to the complaint. A default judgment was entered in this Court on January 7, 1986. Defendant has moved to vacate the default judgment and dismiss the action.

## DISCUSSION

The first issue is whether the service of process upon defendant was valid. If service of process was defective, this Court lacked jurisdiction to enter the judgment and it must therefore be vacated and the action dismissed. *See Pennoyer v. Neff,* 5 Otto 714, 729–34, 95 U.S. 714, 729–34, 24 L.Ed. 565 (1877); *Leab v. Streit,* 584 F.Supp. 748, 760 (S.D.N.Y.1966) (service of process upon defendant fully complied with Rule 4(e) of the Federal Rules of Civil

Procedure and § 308(4) of the New York Civil Practice Law and Rules).

Rule 4 of the Federal Rules of Civil Procedure governs the manner in which service of process must be effected in the federal courts. Since Rule 4 permits service of process to be effected by means of the law of the state in which the district court is held, the law of New York must be examined.

Plaintiff claims that process was served pursuant to New York's "nail and mail" provision. N.Y.Civ.Prac.Law § 308 (McKinney 1985). The statute requires in the first instance that service of process be attempted by personal service to the defendant himself, *id.* § 308(1), or to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known address." *Id.* In the event that service cannot be made pursuant to the foregoing, through the exercise of due diligence, a plaintiff is authorized to utilize the "nail and mail" provision.[1] *See Reed v. Donenech,* 90 A.D.2d 844, 845, 456 N.Y.S.2d 90, 91 (2d Dept. 1982).

According to plaintiff, process was served on defendant Ford:

> by affixing a true copy ... to the door of said premises, which is defendant's—actual place of business—dwelling house—usual place of abode—within the state. Deponent was unable, with due diligence to find Defendant or a person of suitable age and discretion, thereat, having called there:
>
> August 14, 1985 at 2:30 p.m., no answer
>
> August 14, 1985 at 8:30 p.m., no answer
>
> August 15, 1985 at 8:00 a.m., no answer

---

**1.** Section 308(4) states that "where service under CPLR 308(1) and (2) cannot be made with due diligence, "service may be effectuated" by affixing the summons to the door of either the actual place of business, dwelling place or usual place

of abode within the state of the person to be served and by mailing the summons to such person at his last known address." N.Y.Civ. Prac.Law § 308(4) (McKinney 1985).

August 15, 1985 at 12:30 p.m., no answer

August 15, 1985 at 9:30 p.m., no answer.

Affidavit of Service of Summons and Complaint of Neil Gillespie Dated May 13, 1986. The affidavit also states that the summons and complaint were mailed to defendant Ford's residence in Maryland. *Id.*[2]

■ The process server, according to his affidavit, made numerous attempts at personal service, one attempt being before the usual working hours of the day and two after the usual working hours of the day on two different days. This is sufficient to satisfy the due diligence requirement. *See Gintzler v. Schwarz,* 126 Misc.2d 491, 492, 482 N.Y.S.2d 986, 988 (N.Y.Sup.Ct.1984) ("due diligence" found where two service attempts made prior to actual claimed service, once early on a weekday morning when it would be expected that occupants of premises had not left for work and another during the early evening hours of a weekday when occupants would likely be having dinner); *see also Union Garage, Inc. v. Wheatle,* 108 Misc.2d 77, 79–80, 437 N.Y.S.2d 52, 54 (N.Y.Civ.Ct.1981) (attempts to serve on weekday at 5:45 p.m. and on weekend at 12:05 p.m. constituted sufficient "due diligence" to authorize service under "nail and mail" provisions). Accordingly, service of process was properly made pursuant to Section 308(4),[3] and the motion to vacate the default and dismiss the action based on improper service of process is denied.

**2.** The process server also indicated that on August 15, he tried inquiring at the homes of defendant's neighbors as to the whereabouts of the defendant, but was unable to obtain an answer because no one would answer their door.

**3.** Because service was proper under Section 308(4), the Court need not address the issue of whether service was proper under Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. However, the Court is persuaded by Judge Owen's ruling in *William B. May Co., Inc. v. Hyatt,* 98 F.R.D. 569, 570 (S.D.N.Y.1983), which held that the mailing of an acknowledgment of service form is not proper service on an out of state defendant in a diversity action.

Defendant has also moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from the default judgment to enable a resolution of this matter on the merits. For reasons set forth below, the motion is granted.

■ The determination of a Rule 60(b) motion falls squarely within the trial court's discretion. *See, e.g., United States v. Erdoss,* 440 F.2d 1221, 1223 (2d Cir.), *cert. denied,* 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971). In exercising this discretion, "all doubts should be resolved in favor of those seeking relief under Rule[ ] ... 60(b)," *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983), so as to ensure that actions will be resolved on the merits, *Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 539–40 (S.D.N.Y.1985).

■ Rule 60(b), in relevant part provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed.R. Civ.P. 60(b)(1).[4] Courts in this Circuit applying Rule 60(b)(1) to default judgments have gone beyond the bare wording of the rule and have applied a three factor test. The court is to consider: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Davis v. Musler,* 713 F.2d at 915; *Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. at 539.[5]

**4.** Defendant also seeks to vacate the judgment based on Rule 60(b)(4) on the ground that the judgment is void. Because this Court has found service of process to be proper, the judgment is not void.

**5.** Plaintiff contends that defendant's motion was not timely because it was not brought within a reasonable time. Under Rule 60(b)(1) a default judgment may be reopened on a motion made within one year. The defendant's motion is clearly within the one year time applicable under section b(1) upon which this decision is based.

## Willfulness

█ It is clear that the failure of defendant to respond was willful. Specifically, correspondence from defendant's attorney dated December 11, 1985 demonstrates that defendant made a conscious and deliberate determination not to respond to the complaint. This determination was made, according to this correspondence, "both because previous attempted service of process was thought ineffective and there are serious questions as to the merits of the action." Defendant's deliberate choice to rely on ineffective service and "questions as to the merits of the action" was an affirmative tactical decision that constitutes neither mistake nor excusable neglect.[6]

█ There is no doubt that defendant had actual notice of the lawsuit because he was sent at least three notices, including notice by both Federal Express and "Zap Mail," of a pretrial conference scheduled in this matter.[7] Further, Ford was sent another copy of the pleadings before the default judgment was applied for, and his attorneys were hand-delivered a copy of the application for a default judgment before the application was submitted to the court. Defendant chose not to appear at the pretrial conference and he did not appear before entry of judgment, despite such notice.

## Meritorious Defense

█ With respect to the existence of a meritorious defense, the motion papers submitted are sufficient to raise a serious question as to whether the goods taken by Ford were based on a consignment or a sale. Defendant need not conclusively establish the validity of those defenses, *Davis v. Musler*, 713 F.2d at 916, but must make some showing of their existence other than mere allegations, *Tecnart Indust-*

*ria E. Comercio Ltda. v. Nova Fasteners Co.*, 107 F.R.D. 283, 285 (E.D.N.Y.1985). Defendant has met this burden.

## Prejudice

█ With regard to the third criterion, plaintiff does not contend that he would be substantially prejudiced if the judgment were vacated, and the Court sees no basis for any prejudice. Delay alone is not a sufficient basis for establishing prejudice. *Davis v. Musler*, 713 F.2d at 916. Rather, it must be shown that delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure (Civil) § 2699, at 536–37 (1983)); *see Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. at 541. No such claim has been made here.

Finally, in close cases, courts favor disposition of a case on the merits. *See Schwab v. Bullock's, Inc.*, 508 F.2d 353, 355 (9th Cir.1974). Moreover, the sanction of a default judgment is a severe one, *Tecnart Industria E Comercio Ltda. v. Nova Fasteners Co.*, 107 F.R.D. at 282, which the court does not feel is appropriate in this case where the defendant appears prepared to actively defend this case.

█ Rule 60(b) allows the Court to vacate a judgment "upon such terms as are just." Because the willful acts of Defendant caused the default judgment to be entered, this Court believes that it is appropriate to impose the reasonable costs and attorney's fees incurred by plaintiff in opposing this motion on the defendant. Within 10 days of this Opinion, plaintiff is to file an affidavit and supporting documentation setting forth in detail the costs and attorney's fees related to this motion.

---

**6.** The belief that there are "serious questions as to the merits of the action" is not a sound basis for failing to answer. Questions going to the merits of a case should be asserted in an answer or on a motion to dismiss.

**7.** While it is irrelevant in an analysis of the service of process whether the defendant received actual notice of the suit, *see Budget Marketing, Inc. v. Toback*, 88 F.R.D. 705, 708 (S.D. Iowa 1981), these additional notices support the finding that defendant's failure to answer the complaint was willful.

## CONCLUSION

Notwithstanding defendant's willful conduct in deciding not to answer the complaint, the motion to vacate the default judgment is granted. The defendant has established the existence of a possible defense, and there is no prejudice to the plaintiff. The default judgment entered against defendant is hereby vacated.

Plaintiff is awarded the reasonable costs and attorney's fees incurred in opposing this motion. Within 10 days of this opinion, plaintiff shall file an affidavit and supporting documentation relating to these costs and fees.

Discovery shall be completed on or before August 29, 1986. A joint pretrial order shall be submitted no later than September 19.

SO ORDERED.

