**Martin KATZ and Louana Katz, Plaintiffs-Appellants,**

v.

**The GOODYEAR TIRE AND RUBBER COMPANY, Defendant-Appellee.**

No. 984, Docket 83–7738.

United States Court of Appeals, Second Circuit.

Argued March 30, 1984.

Decided June 14, 1984.

Irving R. Kaufman, Circuit Judge, filed opinion concurring in result.

Herbert Rubin, New York City (Howard L. Wexler, David B. Hamm, Herzfeld & Rubin, P.C., New York City, of counsel), for plaintiffs-appellants.

James A. Gallagher, Jr., Garden City, N.Y. (Robert A. Faller, Moore, Berson, Lifflander & Mewhinney, Garden City, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, KEARSE, and PIERCE, Circuit Judges.

PIERCE, Circuit Judge.

Plaintiffs Martin and Louana Katz appeal from an order and judgment of the United States District Court for the Southern District of New York, Irving Ben Cooper, *Judge*, entered August 15, 1983, granting the motion of defendant The Goodyear Tire and Rubber Company ("Goodyear") for summary judgment and dismissing the complaint on the ground that plaintiffs had failed to prove that they were New York domiciliaries at the time their claim accrued and consequently had not shown that pur-

suant to New York's borrowing statute, N.Y.Civ.Prac.Law § 202 (McKinney 1972), New York's three-year limitation period instead of Virginia's two-year limitation provision should apply.

Upon review, we conclude that there is a material factual dispute about plaintiffs' domicile at the time their action accrued. Therefore, we reverse the order and judgment of the district court and we remand for determination of this disputed factual issue by the trier of facts, in this case a jury.

## I. BACKGROUND

Plaintiffs initiated this diversity action on June 25, 1981, to recover damages for personal injuries and loss of consortium allegedly caused by an accident which occurred in Virginia on October 23, 1978, when one of the tires on the truck Martin Katz was driving allegedly exploded and caused the vehicle to overturn. In their complaint, plaintiffs alleged that they were New York domiciliaries and demanded a jury trial. Goodyear's answer denied liability and asserted various affirmative defenses, including the statute of limitations.

By motion dated August 23, 1982, Goodyear moved before Judge Pollack, to whom the case initially had been assigned, for summary judgment dismissing the complaint on the ground that the action was barred by the applicable statute of limitations. On September 23, 1982, Judge Pollack held a hearing on the motion, at which time Goodyear argued that plaintiffs' action was barred by Virginia's two-year statute of limitations. Goodyear also argued that plaintiffs were not New York domiciliaries at the time the cause of action accrued and, consequently, plaintiffs could not take advantage, pursuant to New York's borrowing statute, N.Y.Civ. Prac.Law § 202,[1] of New York's three-year statute of limitations. Goodyear acknowl-

---

**1.** Section 202, the New York borrowing statute, provides as follows:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place

without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the state shall apply.

N.Y.Civ.Prac.Law § 202 (McKinney 1972).

edged that Martin Katz had been domiciled in New York from 1948, when he moved to this country from Innsbruck, Austria, until 1974, but contended that Katz had abandoned his New York domicile and had adopted a Florida domicile by the time the accident occurred. Plaintiffs disputed this assertion and contended that Katz had remained a New York domiciliary. Judge Pollack denied Goodyear's motion "without prejudice to renewal at the trial."

On April 26, 1983, Goodyear renewed its motion for summary judgment, this time before Judge Cooper, to whom the case had been reassigned. Judge Cooper held a hearing on the motion on May 9, 1983. At the hearing, Goodyear relied on the papers it previously had submitted. At Judge Cooper's request, plaintiffs testified and presented two witnesses on their behalf. The substance of this testimony was that Martin Katz had expressed his intention during the relevant period to remain domiciled in New York. By Memorandum and Order filed July 13, 1983, Judge Cooper granted Goodyear's motion for summary judgment, finding that "plaintiff failed to convince us of his claim of domiciliary intent."

As is often the case where the question of intent vis-a-vis domicile is involved, the parties herein agree on many of the facts but disagree on the inferences the factfinder should draw therefrom. *See Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 699 (1st Cir.1979); Restatement (Second) of Conflict of Laws § 18 comment d (1971). Plaintiffs and Goodyear agree that Martin Katz was a New York domiciliary until September, 1974, when his parents sold their home in Plainview, New York, where Katz was living, and moved to Sunrise, Florida. Katz helped his parents move by driving the family car, which carried his parents' belongings, to Florida. He remained in Sunrise for one or two months, purportedly only to assist his parents in the move. In an affidavit submitted in opposition to the summary judgment motion, Katz' sister, Barbara Sosne, stated that "[o]ther than the change of clothes and toiletries he took [to Florida],

he left most of his own personal belongings at my home at 53 Roundtree Drive, Melville, New York." Katz' friend John Dalton testified at the May 9, 1983 hearing that Katz was "emphatic in saying that he ... could not conceive of living anywhere but New York on his farm." Both Katz and his sister Barbara stated via affidavit that Katz' intention was to return to New York and then to attend a commercial diving training center in California in the early part of 1975.

In late September, 1974, Katz obtained a Florida driver's license that bore the address of his parents' new home in Sunrise. He also worked for a short period parking cars in Fort Lauderdale, Florida. In October of that year, he met Louana Christine Mobley, who eventually became his wife. Shortly after he met Louana, Katz moved in with her in Lake Wales, Florida. In an affidavit to the court, Katz stated that meeting his future wife "caused me to delay my trip to California and to adjourn commencement of commercial diving classes for one semester." Louana testified at the May 9th hearing that "from the very beginning" Katz told her of his aspiration to return to New York and buy a farm there.

In June, 1975, Katz and Louana left Florida, toured the southwest in a van and eventually went to California, where, in August, 1975, Katz applied to diving school. In his application, Katz listed Louana's Lake Wales residence as his "[p]revious [a]ddress." In the employment history section of the application, Katz stated that he had left a previous job because he "moved to [Florida]."

After Katz completed the diving training course in March, 1976, the couple left California and went to New York, where they stayed for several weeks with Katz' friend Nancy Prince. In April, 1976, plaintiffs left New York for Scotland. In October, 1976, while in Scotland, Katz completed an employment application in which he listed his parents' residence in Sunrise, Florida as his address. While in Scotland, he also

completed tax and insurance forms which listed his mother's Florida residence as his address.

The Katz' were married in January, 1977, in Scotland, where they remained until September of that year. In October, 1977, the couple returned to New York, where they stayed with Nancy Prince. In January, 1978, plaintiffs moved their belongings into Katz' sister's home in Melville, New York. The next month, they again left for Scotland in search of employment. While in Scotland, Louana gave birth to a child and, in August, 1978, they returned to Melville, New York, where they stayed with Katz' sister. In September, 1978, plaintiffs set out from New York with their child to visit their parents for several weeks in Florida and South Carolina, respectively. The accident occurred in Virginia on October 23, 1978, while Martin Katz was driving his father-in-law's truck from South Carolina to New York.

As stated, the district judge granted Goodyear's motion for summary judgment, finding that "plaintiff failed to convince us of his claim of [New York] domiciliary intent" and that, therefore, the Virginia two-year statute of limitations, not the New York three-year period, was applicable. Plaintiffs appealed. Upon review, we hold that it was improper to grant Goodyear's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) since there is a material factual dispute, which should be resolved by the trier of fact, in this case a jury, as to Katz' domicile at the time of the accident.

## II. DISCUSSION

### A.

Goodyear urges us to review the district court's finding as to plaintiffs' domicile under the "clearly erroneous" standard set out in Fed.R.Civ.P. 52(a). We decline to do so, however, because Goodyear's principal premise—that the district judge was not acting on defendant's motion for summary judgment but instead was making his decision after a full bench trial on the domicile issue—is fundamentally incorrect. It is undisputed that plaintiffs requested a jury trial in their complaint. Nothing in the record indicates that they waived their right to jury determination of the factual issues in this case, including those in connection with the domicile question.[2] Further, it is clear from the record that the district court and the parties understood that Judge Cooper, after a hearing, was ruling on Goodyear's motion for summary judgment in dismissing the complaint. The district judge's order directing the May 9th hearing expressly stated that the hearing was "on the motion for summary judgment." At the start of the hearing, Goodyear's counsel represented to the court that the parties were appearing "on a renewal of the motion for summary judgment." At the conclusion of the hearing, Judge Cooper noted that "the hearing addressed to the motion for summary judgment [was] concluded."[3] In short, the record belies Goodyear's contention that

2. In analyzing the propriety of a court deciding a factual issue on a pretrial motion, we distinguish between jurisdictional and nonjurisdictional issues. The question of jurisdiction need not be submitted to a jury. *Gilbert v. David*, 235 U.S. 561, 568, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1915); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Where the statute of limitations operates as an affirmative defense, however, issues of fact as to the application of that defense must be submitted to the jury. *See Bertha Building Corp. v. National Theatres Corp.*, 248 F.2d 833, 835–36 (2d Cir.1957) ("if National's defense based on the statute of limitations tendered genuine issues of fact, they were also as of right triable by jury"), *cert. denied*, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811

(1958). The fact that the applicability of the statute of limitations turns on the question of domicile does not affect the application of that rule. *Davis v. Central Vermont Ry., Inc.*, 227 F.2d 948, 950 (2d Cir.1955) (upholding jury's credibility findings as to plaintiff's domicile).

3. In addition, the district court's Memorandum and Order issued after the hearing stated that "[t]he motion for summary judgment is fully warranted and accordingly granted." The Order and Judgment entered pursuant to Judge Cooper's ruling expressly characterized Goodyear's request for relief as a motion "for summary judgment dismissing the Amended Complaint."

the district court's determination involved a ruling on anything other than Goodyear's motion for summary judgment.

## B.

 Before addressing the appropriateness of the district judge's grant of summary judgment for Goodyear, we review the applicable New York law regarding the burden of proof where the borrowing statute is involved. Where the statute of limitations is an affirmative defense, the party asserting the defense must prove the elements of that defense. *See Romano v. Romano*, 19 N.Y.2d 444, 447, 280 N.Y.S.2d 570, 573, 227 N.E.2d 389 (1967); *Brush v. Olivo*, 81 A.D.2d 852, 853, 438 N.Y.S.2d 857, 859 (1981).[4] With respect to the borrowing statute, however, New York law appears to place "[t]he burden of proving residency ... upon the party seeking to take advantage of the New York statute." *Public Administrator v. Curtiss-Wright Corp.*, 224 F.Supp. 236, 240 (S.D.N.Y.1963); *Bache Halsey Stuart Inc. v. Namm*, 446 F.Supp. 692, 694 (S.D.N.Y.1978); *see Oglesby v. Cranwell*, 250 A.D. 720, 293 N.Y.S. 67, 68 (1937) (per curiam) ("[t]o make section 13 [section 202's predecessor], Civil Practice Act, applicable, it will be necessary for plaintiff to show that he was a resident of this state at the time" the claim accrued); *Whiting v. Miller*, 188 A.D. 825, 829, 176 N.Y.S. 639, 641 (1919) (burden on plaintiffs to prove they were residents at the time the claim accrued if they "wished to bring themselves within the exception contained in ... section 390–a," a predecessor of section 202). Thus, it would appear

that initially Katz had the burden of proving that he was domiciled [5] in New York in 1978 at the time of the accident.[6] This seems to have been Judge Cooper's understanding of the burden of proof; he noted in his Memorandum and Order that "plaintiff failed to convince us of his claim of domiciliary intent."

 The nature of domicile, however, is such that a person has one at all times; his domicile might be a domicile of origin, a domicile of choice, or a domicile assigned by operation of law. *In re Newcomb*, 192 N.Y. 238, 250, 84 N.E. 950, 954 (1908); *see Bodfish v. Gallman*, 50 A.D.2d 457, 459, 378 N.Y.S.2d 138, 141 (1976) (" '[t]he existing domicile, whether of origin or selection, continues until a new one is acquired ....' ") (citation omitted); *accord Hawes*, 598 F.2d at 701 ("[a] person may have only one domicile at a time and, until a new one is acquired, the established one continues"). Under New York law, the party asserting a change in domicile has the burden of proving such a change by clear and convincing evidence. *In re Newcomb*, 192 N.Y. at 250, 84 N.E. at 954 ("burden of proof rests upon the party who alleges a change" in domicile); *Bodfish v. Gallman*, 50 A.D.2d at 459, 378 N.Y.S.2d at 141; *see* Restatement (Second) of Conflict of Laws § 19 comment c (1971). Herein, the parties agreed that Katz was domiciled in New York until 1974. It was incumbent upon Goodyear to prove that thereafter Katz changed his domicile to a state other than New York. Importantly, Goodyear had to show by clear and convincing evidence that Katz had the "require[d] ... intent to give up

---

4. In New York, however, "[w]hile the burden of proving the affirmative defense of the Statute of Limitations rests on the party invoking it, a defendant asserting the statute need not negate any exceptions contained therein...." *Doyon v. Bascom*, 38 A.D.2d 645, 646, 326 N.Y.S.2d 896, 898 (1971) (plaintiff must prove that statute of limitations was tolled). Rather, "the burden rest[s] upon plaintiffs to aver facts showing the case at hand falls within such exceptions." *Id.; see Brush v. Olivo*, 81 A.D.2d 852, 853, 438 N.Y.S.2d 857, 859 (1981) ("a party relying upon an exception [to the statute of limitations] has the burden of proving that he or she comes within the exception").

5. For purposes of the borrowing statute, the term "resident" as used in section 202 is equated with domiciliary. *Bache Halsey Stuart Inc. v. Namm*, 446 F.Supp. 692, 694 (S.D.N.Y.1978); *see Banasik v. Reed Prentice Div. of Package Mach. Co.*, 34 A.D.2d 746, 747, 310 N.Y.S.2d 127, 129 (1970) (per curiam), *aff'd*, 28 N.Y.2d 770, 321 N.Y.S.2d 376, 269 N.E.2d 918 (1971).

6. To benefit from the borrowing statute, plaintiffs had to be domiciled in New York when the cause of action accrued. *Cellura v. Cellura*, 24 A.D.2d 59, 60, 263 N.Y.S.2d 843, 844 (1965).

the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality." *Bodfish v. Gallman,* 50 A.D.2d at 458, 378 N.Y.S.2d at 140. While it is possible that the issue of domicile might be determined by way of a summary judgment motion, it could not be so determined on the evidence which was presented herein, since there existed a material factual dispute about Katz' intent to change, or not to change, his domicile from New York to Florida.

### C.

To grant summary judgment under Rule 56, a court must determine that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In doing so, the court "cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried." *Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962) (emphasis in original); *United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). The burden lies on the moving party to show, "on the basis of admissible evidence adduced from persons with personal knowledge of the facts, that there is no genuine issue of material fact," *Burtnieks v. New York,* 716 F.2d 982, 985 (2d Cir.1983); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Indeed, where "the party against whom summary judgment is sought comes forth with affidavits or other material ... that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

A dispute over a material fact may exist even if the parties are in accord as to the actuality of circumstances. As previously has been noted:

> "The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment."

*Empire Electronics Co.,* 311 F.2d at 180 (quoting *Bragen v. Hudson County News Co.,* 278 F.2d 615, 618 (3d Cir.1960)). The district court should resist drawing fact inferences in summary judgment situations, particularly where, as here, intent is at issue. *See Empire Electronics Co.,* 311 F.2d at 180–81.

The district court did not give due regard to these well-established principles in granting summary judgment on Goodyear's behalf. It was error for the court to have decided on the merits the disputed issue of intent, which should have been left for the jury.

In its motion for summary judgment, Goodyear asserted that Katz had abandoned his New York domicile when he left for Florida in September, 1974. As proof that Katz had intended to become domiciled in Florida, Goodyear offered evidence that Katz obtained a Florida driver's license shortly after his arrival there; moved in with his future wife Louana in Lake Wales, Florida; listed the Lake Wales address in a 1975 application to diving school (in which he also stated that he left a previous job because he "moved to [Florida]"); and listed his mother's address in a 1976 employment form, a 1976 tax form, and a 1977 insurance application. Goodyear contended that an inference could be drawn from this evidence that Katz had abandoned his New York domicile in favor of a Florida domicile.

Katz disputed this factual inference of intent. By affidavit and in his testimony in the May 9th hearing, Katz stated that he went to Florida, where he only remained

for ten months, to help his parents move into their new home. His sister Barbara Sosne stated in an affidavit that Katz had informed her of his intention to return to New York before going on to diving school in California. Katz' friends John Dalton and Lynne Jefferson both testified that throughout the relevant period Katz had told them of his intention to return to New York, possibly to live in a farm he hoped to buy in upstate New York. A third friend, Nancy Prince, also stated as much in an affidavit. Louana Katz testified that "from the very beginning" of their relationship, Katz told her of his aspiration to return to and buy a farm in New York. In addition to the above testimony, Katz submitted evidence to show that he returned to New York as often as conditions permitted him to do so. For example, after Katz completed diving school in California, he and Louana went to New York, where they stayed with Nancy Prince before leaving for Scotland. They returned from Scotland to New York, where they again stayed with Prince and eventually moved their belongings into Barbara Sosne's house in Melville, New York. After returning from Scotland the second time, they again stayed with Katz' sister before they embarked on the trip to visit their respective parents.

Thus, it is clear that there was a dispute about a material fact—plaintiffs' domicile at the time of the accident.[7] The way to resolve that dispute was to draw fact inferences and to make credibility findings, something the judge was precluded from doing on the summary judgment motion. *See Heyman,* 524 F.2d at 1319–20 ("the 'fundamental maxim' remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried"); *see* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725, at 104–05 (1983) ("a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial"). The question of whether Goodyear had met its burden of showing that at the time of the accident Katz had changed his domicile from New York to Florida involved a dispute about a material fact, which dispute should have been left for the trier of facts, herein a jury, to resolve.

### D.

■ Contrary to plaintiffs' contention, the district court did not abuse its discretion when it denied plaintiffs' motion for leave to amend the complaint on the ground that "granting the application would necessitate further proceedings by [Goodyear] (taking of depositions) and consequent trial delay." *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 81 (2d Cir.1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 384 (2d Cir.1968). However, in light of our determination herein, we leave to the district court the decision of whether to adhere to this ruling upon remand.

### III. CONCLUSION

For the foregoing reasons, we reverse the order and judgment of the district court and we remand for further proceedings consistent herewith.

KAUFMAN, Circuit Judge (concurring).

I join in the result but disagree with Part II B of my brother Pierce's opinion. I write separately to take issue with certain conclusions regarding the burden of proving intent to change domicile and to make clear that there may be permissible alterna-

---

7. We must presume that the district court concluded that plaintiff Louana Katz was not domiciled in New York at the time of the accident because Martin Katz was not so domiciled. Since we reverse the grant of summary judgment on the latter point, we also reverse and remand for further exploration of the disputed fact question of whether Louana Katz was a New York domiciliary at the time of the accident.

tives to a full trial on the merits in a case such as the one before us.

I agree with my colleagues that Katz, as the party seeking to avail himself of the benefits of New York's borrowing statute, would bear the initial burden of proof at trial on the issue of domicile. I am not nearly so certain, however, that New York law would shift the burden to Goodyear merely because the parties agree that Katz was a New York domiciliary at some point in the past. Conceivably, Katz might have acquired and given up any number of domiciles between 1974 and 1978, when the instant cause of action accrued. In any event, I do not believe that we have to decide that issue today. For the purpose of determining whether a grant of summary judgment was proper in this case, burdens of proof at trial are important only insofar as they indicate what is or is not a material fact within the meaning of Fed.R. Civ.P. 56.

Further, although I agree there exists a genuine dispute as to a material issue of fact in this case, I am troubled by the implication that it is not possible to dispose of such discrete issues as this one without resort to a full trial on the merits. While recognizing that summary judgment is a "drastic remedy", *Heyman v. Commerce and Industry Co.*, 524 F.2d 1317, 1320 (2d Cir.1975), this Court has long urged that expeditious methods (such as mini-trials) be employed to resolve preliminary factual issues whenever appropriate. *See Jenkins v. Chemical Bank*, 721 F.2d 876, 880 (2d Cir.1983). Principles of sound judicial administration require that this effort go forward, and that full-blown trials be avoided where what is essentially a procedural dispute could preclude consideration of the underlying claim. Without commenting upon the precise procedure to be utilized on remand in this case, it would seem paradoxical to require a full trial on the merits to determine whether a trial is appropriate.