Francis C. **WALSH**, Plaintiff,

v.

**MARYLAND BANK, N.A.,** Maryland **National Corporation and Mastercard,** Defendants.

No. 91 Civ. 7483 (CSH).

United States District Court, S.D. New York.

Nov. 10, 1992.

---

438

Alexander Kran III, New York City, for plaintiff Francis C. Walsh.

Lawrence S. Hirsh, Jon D. Lichtenstein, Robert J. Segall, Spengler Carlson Gubar Brodsky & Frischling, New York City, for defendants Maryland Bank, Maryland Nat. Corp. and MasterCard.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

This case is before the Court on defendants' motion to dismiss the complaint pursuant to Rule 12(c), Fed.R.Civ.P.

For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

On June 14, 1985, Trans World Airlines Flight 847B departing Athens for Boston was hijacked in Athens. Plaintiff Francis C. Walsh, then a resident of Massachusetts and now a resident of Florida, was a passenger on that flight.

The hijackers allegedly forced Walsh to assume "the crash position," with his head between his legs, for approximately 48 hours. Walsh claims that this caused him to lose sight in his left eye on or about November 28, 1985. Complaint, ¶ 8.

The plaintiff had purchased his airline ticket from a travel agency in Massachusetts on March 29, 1985. Affidavit of Francis C. Walsh ("Walsh Aff."), ¶ 2; Defendants' Notice of Motion, Affidavit of Todd W. Weaver ("Weaver Aff.), ¶ 27. He used his MasterCard, which had been issued to him by defendant Maryland Bank, N.A. ("Maryland Bank").

Maryland Bank was a national banking association with its offices in Delaware, Weaver Aff., ¶ 1; its credit card liabilities were later assumed by MBNA America, N.A. ("America Bank") in January 1991.[1] *Id.*, ¶ 12. America Bank is also a national banking association located in Delaware. *Id.*, ¶ 13. Defendant MasterCard International Inc. ("MasterCard International"), sued hereunder as "MasterCard," is a Delaware corporation with its principal place of business in New York. Defendants' Notice of Motion, Affidavit of Robert E. Norton, Jr., ¶ 1.

By using his credit card, Walsh automatically obtained travel insurance. The insurance policy is contained in the credit card agreement and states in pertinent part: "$100,000.00 is payable for accidental loss of one limb or sight of one eye." Plaintiff's Exh. E. The policy also provides that the loss must occur within 365 days of the date of the accident. *Id.*

Walsh asserted a claim under this policy for the loss of sight in his left eye. Upon rejection of that claim, he filed a complaint against Maryland Bank, MasterCard International, and Maryland National Corporation ("MNC")—a Maryland corporation and the corporate parent of Maryland Bank, Weaver Aff., ¶¶ 2–3—on November 6, 1991. He seeks $900,000.00 in damages for breach of contract, gross negligence, and fraudulent inducement of contract.

Defendants moved to dismiss the complaint on three grounds: 1) that this Court lacks personal jurisdiction over the defendants; 2) that plaintiff's claims are barred by the applicable statutes of limitations; and 3) that plaintiff has failed to state his negligence and fraud claims adequately.

## DISCUSSION

Defendants have brought this motion under Rule 12(c), Fed.R.Civ.P., which provides:

> **Motion for Judgment on the Pleadings.**
> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Both parties have submitted affidavits in this case and I decline to exclude them. Accordingly, defendants' motion is treated as one for summary judgment. *See, e.g., National Assn. of Pharmaceutical Mfrs.*

---

**1.** To avoid confusion, I refer to Maryland Bank throughout this opinion rather than to America Bank.

*v. Ayerst Laboratories,* 850 F.2d 904, 911 (2d Cir.1988).

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance,* 804 F.2d 9, 11 (2d Cir.1986) (citation omitted), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. As the Supreme Court has held, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### 1. Jurisdiction

When a defendant claims that a court lacks personal jurisdiction over it, the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, the plaintiff may defeat a jurisdiction-testing motion by asserting legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). At this preliminary stage, "the plaintiff's *prima facie* showing may be established solely by allegations." *Id.* After discovery, "the plaintiff's *prima facie* showing ... must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.* At this later stage, "[b]are allegations of jurisdiction will not suffice...." *Bicicletas Windsor v. Bicy-*

*cle Corp. of America,* 783 F.Supp. 781, 783 (S.D.N.Y.1992) (citations omitted).

Although the parties in the case at bar have submitted affidavits, they have not conducted discovery. Plaintiff therefore defeats defendant's motion upon a *prima facie* showing of jurisdiction through his pleadings and affidavits. All pleadings and affidavits are construed in the light most favorable to plaintiff and where doubts exist, they are resolved in his favor. *E.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (citations omitted).

In a diversity action such as this, personal jurisdiction over a defendant is determined by the law of the forum in which the court sits. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (citation omitted). New York law therefore applies. Although Walsh fails to cite a specific provision of New York law that confers jurisdiction over the defendants, he appears to rely on N.Y.C.P.L.R. §§ 301 and 302 (McKinney 1990).

### A. Section 301—Doing Business

The plaintiff suggests that the defendants are "doing business" under N.Y.C.P.L.R. § 301 (McKinney 1990) and are therefore subject to jurisdiction in New York. While the statute itself provides only that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore," courts have construed it to include foreign corporations who are doing business in the *"traditional* sense." *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (emphasis in original), *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), *quoted in Ball,* 902 F.2d at 198 and *Bicicletas Windsor,* 783 F.Supp. at 784.

Notwithstanding the position taken in the original motion, it is now undisputed that MasterCard International does business in New York and is subject to jurisdiction here. Whether the other two defendants can be sued in New York is another matter.

Walsh asserts that Maryland Bank and MNC "clearly conduct extensive business in New York on a continuous and systematic basis, thus subjecting themselves to the jurisdiction of this Court." Plaintiff's Brief at 2. He reaches this conclusion on the basis of two allegations: that Maryland Bank has an (800) phone number that customers in New York use to request applications for credit cards, Walsh Aff., ¶ 10; and that Maryland Bank issues credit cards to New York residents through MasterCard International, which has its principal place of business in New York. Plaintiff's Brief at 2.

But these allegations fail, as a matter of law, to meet the "doing business" standard. Maryland Bank and MNC must be "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction." *Ball,* 902 F.2d at 198 (citation omitted). They must be present "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990) (citation omitted). Plaintiff has failed to allege facts supporting such a presence.[2]

Even if plaintiff's allegations are construed as a claim that Maryland Bank solicits credit card business in the New York area via MasterCard International, that is not enough: "[S]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." *Id.* While "solicitation plus additional business activities related to the defendant's operative or financial structures

usually satisfies the [doing business] test," *Bicicletas Windsor,* 783 F.Supp. at 785 (citation omitted), plaintiff has not alleged any additional business activities. He therefore has failed to show that Maryland Bank and MNC are "doing business" under § 301.

■ To the extent that plaintiff's cryptic claims may be viewed as an argument that Maryland Bank is "doing business through an affiliate," *see* Commentary to N.Y.C.P.L.R., § 301 at 11 (McKinney 1990), I reject it. An argument on this ground may be made in one of two ways: 1) by piercing the corporate veil; or 2) by finding an agency relationship.

Now Circuit Judge McLaughlin explained veil-piercing in the Commentary to the C.P.L.R.:

> So long as the corporate amenities are observed, and the corporate operations and responsibilities are distinctly maintained, courts will not ignore the corporate personalities which separate them.... Unless a complete unity between the two corporations results because of the parent's disregard of the corporate distinction, the activities of the one ought not to be attributed to the other.

N.Y.C.P.L.R. § 301 at 13–14 (McKinney 1990) (citations omitted). Plaintiff's claims fall far short of allowing him to pierce the corporate veil.

As for the question of an agency relationship, Judge McLaughlin observed that "[i]t now appears to be the rule that where a foreign corporation has a subsidiary or other 'agent' perform substantial activities

---

**2.** The defendants deny the allegation that Mastercard issues cards on Maryland Bank's behalf. Indeed, a MasterCard officer asserts that MasterCard is a worldwide "payment services membership association" with 29,000 members and that

> plaintiff's statement that [Maryland Bank], a member institution, issues credit cards to its customers through MasterCard is incorrect because MasterCard does not issue credit cards, set credit card fees or determine annual percentage rates on credit card accounts.

Such functions are the exclusive domain of our member institutions.
Affidavit of Victoria J. Brademan, ¶ 4.
Because plaintiff alleges only in his brief that MasterCard issues the cards, and not in his complaint or affidavit, I must resolve the contradiction in favor of the defendant—even on a summary judgment motion. *See, e.g., Schoenbaum v. Firstbrook,* 405 F.2d 200, 209 (2d Cir. 1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). Assuming the allegation's truth, however, plaintiff's argument still fails. *See* discussion, *infra.*

in this state for its benefit—acts which are so essential to the foreign corporation that if the subsidiary or 'agent' did not perform them, the foreign corporation would have to—it is doing business in this state...." *Id.* at 18. This may provide plaintiff with his best opportunity for jurisdiction. However, plaintiff cannot allege how Master-Card International's activities rise to this agency level.[3] Maryland Bank and Master-Card International may have a licensing agreement, Affidavit of Victoria Brade-man, ¶ 5, but

> a business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that that company has become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction.

*Landoil Resources,* 918 F.2d at 1046. Accordingly, jurisdiction fails under § 301.

**B. Section 302(a)—Long-arm Jurisdiction**

■ Section 302 of the C.P.L.R. provides in pertinent part:

**(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who, in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state ... or

4. owns, uses or possesses any real property situated within the state.

As the first paragraph of the statute indicates, merely transacting business in New York is not enough. "Essential to the maintenance of a suit against a non-domiciliary under CPLR 302 (subd [a] par. 1) is

the existence of some articulable nexus between the business transacted and the cause of action sued upon.... Indeed, it is this basic requirement that differentiates the long-arm authority conferred by CPLR 302 (subd [a], par. 1) from the more traditional authority of the New York courts under CPLR 301...." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983) (citation omitted); *see also* Commentary to N.Y.C.P.L.R. § 302 at 77 (McKinney 1990) ("It is not sufficient for jurisdiction under this section that the defendant has performed an act in New York; it is also required that the cause of action *arise* from that act.") (emphasis in original). Plaintiff's affidavit and argument demonstrate his failure to understand this basic requirement.

Walsh states in his brief that the defendants "transact business in the State of New York for Jurisdictional purposes.... In fact, the plaintiff herein has used his [Maryland Bank] Mastercard on several occasions in the State of New York." Brief at 9. He states in his affidavit that

> I have used my MasterCard in the State of New York at Restaurants and Stores, and thus feel that for Jurisdictional purposes New York is the proper forum for my case.... As previously mentioned, when I paid my MasterCard bill for the subject Airline tickets, I made my check payable to "MasterCard" and upon information and belief my check was deposited in a New York State bank.

Walsh Aff., ¶¶ 9, 11. But neither statement establishes a sufficient nexus between Maryland Bank's business in New York and the breach-of-contract action.

Plaintiff was a resident of Massachusetts when he purchased his airline ticket. He purchased the ticket from a Massachusetts travel agency. The credit card agreement, which contains the travel insurance that Walsh relies on, states "[t]his agreement is made in Delaware. It is governed by the laws of the state of Delaware and any applicable federal laws." Def. Exh. A at 2. Maryland Bank sent the credit card agree-

---

**3.** The card-issuing allegation is also inadequate on grounds previously stated: that it appears in plaintiff's brief and not in his affidavit or complaint. *See* n. 2, *supra.*

ment from Delaware to plaintiff in Massachusetts. Weaver Aff., ¶ 25. When Walsh demanded payment under the insurance policy, he sent his demand to Maryland Bank in Delaware. *Id.*, ¶ 28.

These facts doom plaintiff's jurisdictional claim. That a Florida resident has used his credit card in New York stores has nothing to do with a dispute stemming from an injury suffered in a hijacked airplane in Athens, a ticket purchased in Massachusetts by a resident of Massachusetts, and an insurance agreement governed by Delaware law.

Walsh's belief that his check was made out to MasterCard and deposited in a New York bank is similarly irrelevant. His insurance claim does not turn on where he sent his check. Moreover, his "belief" is squarely contradicted by the affidavit of America Bank's Todd Weaver, *Id.*, ¶ 18. Such a belief "cannot be credited" when compared to a conflicting affidavit of someone with personal knowledge. *Schoenbaum v. Firstbrook*, 405 F.2d 200, 209 (2d Cir.1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

Plaintiff has failed to make the necessary *prima facie* showing of jurisdiction over defendants Maryland Bank and MNC. Accordingly, the complaint is dismissed against these two defendants.[4]

## C. Discovery

Assuming jurisdiction is absent over MNC and Maryland Bank, Walsh invites the Court to order discovery to determine if jurisdiction can be asserted at a later date. I decline the invitation.

Walsh has failed to make even a threshold showing that discovery is likely to uncover a basis for jurisdiction. The defendants have submitted numerous affidavits, none of which is substantially challenged or contradicted. The plaintiff has offered only speculation. Under these circumstances, discovery is not warranted. *See, e.g., Colson Services Corp. v. Bank of*

*Baltimore*, 712 F.Supp. 28, 33 (S.D.N.Y. 1989); *Grove Valve & Regulator v. Iranian Oil Services*, 87 F.R.D. 93, 96 n. 8 (S.D.N.Y.1980) (Weinfeld, J.).

### 2. Statute of Limitations

The defendants also argue that plaintiff's three causes of action are time-barred. They assert that the applicable statutes of limitations extinguish the breach of contract claim, the gross negligence claim, and the fraudulent inducement claim. Given my previous resolution of the jurisdiction question, I address this assertion only with respect to MasterCard International.

In cases where subject matter jurisdiction is based on diversity, courts apply the statute of limitations that would be applied by the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). I therefore look to New York limitations law. Because it is undisputed that plaintiff's claims do not arise in New York and he is not a New York resident, I must in turn consider whether the "borrowing statute" governs the instant case. That statute, N.Y.C.P.L.R. § 202, provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued except that where the cause of action accrued in favor of a resident of the state, the time limited by the laws of the state shall apply.

(McKinney 1990).

Designed to prevent forum shopping, the borrowing statute directs a New York court to apply the foreign statute of limitations period if it is shorter than New York's. *Hoelzer v. City of Stamford*, 933 F.2d 1131, 1136 (2d Cir.1991); Commentary to N.Y.C.P.L.R. § 202 at 103 (McKinney 1990).

---

**4.** Plaintiff also appears to lack jurisdiction over MNC on the grounds of inadequate service of process. *See* Affidavit of Claire Wudowsky; *S.E.C. v. Gilbert*, 82 F.R.D. 723, 726 (S.D.N.Y.

1979); *Brandt v. Volkswagen A.G.*, 161 A.D.2d 1149, 555 N.Y.S.2d 957, 957–58 (1990). Given plaintiff's other jurisdictional deficiencies, however, I do not reach this issue.

Which foreign statute of limitation applies depends on where the causes of action accrued. Under New York law, that question is resolved by determining the place of injury. *Stafford v. International Harvester Co.*, 668 F.2d 142, 147–50 (2d Cir. 1981); *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973). If the injury is economic, "the cause of action accrues where the economic impact of the defendant's conduct is felt." *Avagliano v. Sumitomo Shoji America, Inc.*, 614 F.Supp. 1397, 1405 (S.D.N.Y.1985) (citing *Arneil*, 550 F.2d at 779 and *Sack*, 478 F.2d at 366); *Bank of Boston Intern. of Miami v. Arguello Tefel*, 626 F.Supp. 314, 317 (E.D.N.Y.1986) (in breach-of-contract suit, cause of action accrued where contractually agreed payments were to be made). *See also Heineman v. S & S Machinery Co.*, 707 F.Supp. 86, 89 (E.D.N.Y.1989) ("the [place of injury] rule asks the practical question, 'who became poorer and where did they become poorer' ") (citation omitted); *Maiden v. Biehl*, 582 F.Supp. 1209, 1212 (S.D.N.Y. 1984). In the case at bar, plaintiff was a resident of Massachusetts when he submitted his claim. That is where he felt the economic impact of non-payment. Accordingly, if the Massachusetts statute of limitations period is shorter than New York's, the Massachusetts statute governs.[5]

**A. The First and Second Causes of Action**

■ As to the first and second causes of action, the defendant claims that the applicable Massachusetts statute of limitations is Mass.G.L. c. 260 § 2A. That section provides:

> Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.

Since this limitations period is shorter than the six-year period provided by New York's governing statute, N.Y.C.P.L.R. § 213(2), defendant claims the Massachusetts statute applies to this dispute.

But defendant cites the applicable statutory section only as to the negligence action. The breach-of-contract claim implicates § 2, not § 2A. Section 2 provides in pertinent part:

> Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied ... shall, except as otherwise provided, be commenced only within six years after the cause of action accrued.

By urging me to apply § 2A to the contract claim, defendant stretches the personal injury component of that section beyond its intended reach. Indeed, the Supreme Judicial Court of Massachusetts recently discussed the distinction between § 2 and § 2A. *See Royal–Globe Insurance Co. v. Craven*, 411 Mass. 629, 585 N.E.2d 315 (1992). Like the case at bar, *Royal–Globe* pitted an insurance company against an individual who was injured and sought to recover benefits under an insurance policy. The company argued that § 2A's three-year period extinguished the breach-of-contract suit; the claimant argued that § 2 governed. The Court agreed with the claimant:

> [T]he present action does not fall within the scope of c. 260, § 2A. Royal–Globe maintains that Craven's action is literally an action "of contract to recover for personal injuries." We do not agree. In discussing G.L. c. 260, § 2A, we said that "[t]he 1948 amendment [that enacted the statute] was designed to produce more uniformity in limitation of actions of tort generally and of actions of contract for personal injuries. The focus of the draftsmen was on accidents resulting in

---

5. Plaintiff does not contend that he is or was a New York resident. Nor does he argue that the cause of action arose in New York. He declares, instead, that New York's statute of limitations applies because of *Bank of Boston, supra,* 626 F.Supp. at 315.

Plaintiff either misreads that case or simply misrepresents its holding. *Bank of Boston*

stands for the proposition previously stated—that New York's borrowing statute requires New York to apply the statute of limitations of the state where the cause of action accrued. Indeed, in that case, like in this one, the court ultimately applied a Massachusetts statute of limitations.

injuries to person or property." The purpose of G.L. c. 260, § 2A, was to insure that defendants responsible for personal injuries would not be vulnerable to suit for a longer period of time if sued in contract than if sued in tort. Craven's injuries, however, did not result from Royal–Globe's conduct.... The basis of Royal–Globe's liability is not its actions resulting in personal injury but, rather, its contractual promise to indemnify against such injury.

411 Mass. at 637–38, 585 N.E.2d at 320 (citations omitted).

■ Having concluded that the six-year limitations period under § 2 governs the contract claim, I must compare that to the relevant New York statute. N.Y.C.P.L.R. § 213(2) governs contract actions, and it contains a six-year period. Since the two periods are the same, I need not borrow the Massachusetts statute. I simply apply New York law.

A cause of action for breach of contract in New York "accrues and the statute of limitations begins to run from the time of the breach." *Barr v. McGraw–Hill, Inc.*, 710 F.Supp. 95, 98 (S.D.N.Y.1989); *Sven Salen AB v. Jacq. Pierot, Jr. & Sons, Inc.*, 559 F.Supp. 503, 505 (S.D.N.Y.1983), *aff'd*, 738 F.2d 419 (2d Cir.1984). Plaintiff alleges that he notified Maryland Bank of his claim on January 29, 1988, and that defendants breached the contract on that date by failing to pay him the $100,000 they owed him. Complaint, ¶¶ 10, 18. Defendant does not claim an alternative date. Since the statute of limitations does not expire until January 29, 1994, I reject defendant's argument as to the breach-of-contract action.

■ Turning to the negligence claim, I must again compare the applicable Massachusetts statute with the corresponding New York law. Section 2A applies here, and it has a three-year limitations period. The governing New York statute is, again, N.Y.C.P.L.R. 213(2), so it appears that I

should apply the shorter Massachusetts period.[6]

Under Massachusetts law, a negligence action generally accrues when the plaintiff is injured. *E.g., Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 741, 374 N.E.2d 582, 583 (1978); *see also Whitcomb v. Pension Development Co., Inc.*, 808 F.2d 167, 169 (1st Cir.1986) (citation omitted). Defendant cites New York law for the date of accrual, but since it urges me to apply a statute of limitations borrowed from Massachusetts, I must also apply Massachusetts law for accrual purposes. *See* Commentary to N.Y.C.P.L.R. § 202 at 109 (McKinney 1990) ("[W]hen a foreign statute of limitations is to be 'borrowed,' it should be borrowed with all of its accoutrements."). The act producing injury here was the breach, so the accrual date was January 29, 1988.

The plaintiff did not file his complaint until November 6, 1991. The statute of limitations expired on January 29, 1991. Accordingly, his second cause of action appears to be time-barred.

I must consider one other issue, however, before determining whether the action is time-barred. Because the borrowing statute was designed to prevent a plaintiff from forum shopping, "it makes no sense at all to apply the shorter limitation of a state where the defendant could not have been sued." *Stafford v. International Harvester Co., supra*, 668 F.2d at 152; *accord Gorlin v. Bond Richman & Co.*, 706 F.Supp. 236, 240 (S.D.N.Y.1989); *Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1302–03 (S.D.N.Y.1986); *Maiden v. Biehl*, 582 F.Supp. 1209, 1214–15 (S.D.N.Y.1984). MasterCard International thus cannot take advantage of the borrowing statute unless it was amenable to suit in Massachusetts.

The parties overlooked this issue. The Court therefore does not know whether Massachusetts could have asserted jurisdiction over the defendant. The party bearing

---

**6.** Unlike Massachusetts, New York courts do not treat tort claims arising out of contracts differently—for statute of limitations purposes—than they treat claims for breach of contract. *See,* *e.g., Video Corp. of America v. Frederick Flatto Associates, Inc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983). Each claim has a six-year term.

the burden of proof should suffer the consequences of not apprising the Court, but only one judge of this Court has directly addressed the burden-bearing question in this context. That was Judge Lasker, in *Grosser v. Commodity Exchange, supra.* He concluded that the burden was on the party seeking to apply New York's limitations statute: "As we see it, the burden of proving lack of amenability to suit or lack of personal jurisdiction rests on plaintiff, who seeks to benefit from what she contends is New York's longer limitations period by invoking a judicially crafted exception to the applicability of the borrowing statute." 639 F.Supp. at 1303. Judge Lasker consequently ruled in favor of the defendants, who had moved to dismiss on statute of limitations grounds.

Judge Lasker's conclusion is supported by two Second Circuit cases addressing the borrowing statute, *Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir.1977), and *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 243 (2d Cir.1984). In *Arneil,* the Court borrowed Washington's statute of limitations. Upholding the district court's dismissal of plaintiff's claims, the Court stated that "[p]laintiffs here have demonstrated no reason why these defendants could not have been sued in Washington other than that Washington's statute of limitations had already run." 550 F.2d at 780. The opinion says nothing about whether defendants—the New York Stock Exchange, a New York brokerage house, two former officers of the brokerage house and a former chairman of the board—had offered evidence on their amenability to suit in Washington. The implicit holding is that plaintiffs bore the burden.

The Second Circuit also considered the borrowing statute in *Katz.* There the question was who should bear the burden of showing a change in domicile. The district court had granted defendant Goodyear's motion for summary judgment because "plaintiff failed to convince us of his claim of [New York] domiciliary intent]," 737 F.2d at 242, and applied Virginia's two-year statute of limitations instead of New York's three-year period. Before addressing the particular facts of the dispute, the

court of appeals discussed who generally bears the burden in borrowing statute cases:

> Where the statute of limitations is an affirmative defense, the party asserting the defense must prove the elements of that defense. *See Romano v. Romano,* 19 N.Y.2d 444, 447, 280 N.Y.S.2d 570, 573, 227 N.E.2d 389 (1967); *Brush v. Olivo,* 81 A.D.2d 852, 853, 438 N.Y.S.2d 857, 859 (1981). With respect to the borrowing statute, however, New York law appears to place "[t]he burden of proving residency ... upon the party seeking to take advantage of the New York statute." *Public Administrator v. Curtiss–Wright Corp.,* 224 F.Supp. 236, 240 (S.D.N.Y.1963); *Bache Halsey Stuart Inc. v. Namm,* 446 F.Supp. 692, 694 (S.D.N.Y.1978); *see Oglesby v. Cranwell,* 250 A.D. 720, 293 N.Y.S. 67, 68 (1937) (*per curiam*) ("[t]o make section 13 [section 202's predecessor], Civil Practice Act, applicable, it will be necessary for plaintiff to show that he was a resident of this state at the time" the claim accrued); *Whiting v. Miller,* 188 A.D. 825, 829, 176 N.Y.S. 639, 641 (1919) (burden on plaintiffs to prove they were residents at the time the claim accrued if they "wished to bring themselves within the exception contained in ... section 390–a," a predecessor of section 202).

*Katz,* 737 F.2d at 243.

Despite this observation, the Court proceeded to place the burden on the defendant. It reasoned that in the domicile context, the burden of proving a change in domicile rests with the party asserting the change. Since there was a dispute of fact as to whether defendant had met this burden, the Court reversed the district court's granting of summary judgment.

While *Katz*'s initial discussion of the law may support Judge Lasker's holding in *Grosser,* as does *Arneil*'s implicit holding, there is authority suggesting a contrary result. Judge McLaughlin alluded to this in the Commentary to the borrowing statute, which I reproduce here at length:

> Under conflict of law principles, a New York court normally applies its own stat-

ute of limitations. CPLR 202, the borrowing statute, is an exception. It has been held, therefore, that when a party seeks to wrap himself in the protection of a foreign statute of limitations, that party, whether he is plaintiff or defendant, bears the burden of proving that he is entitled to the benefit of the foreign statute of limitations. This means that he has to prove that the plaintiff is a nonresident, that the cause of action accrued outside New York, and that the foreign period of limitations has expired. *Katz v. Goodyear Tire & Rubber Co.,* C.A.N.Y.1984, 737 F.2d 238.

These rules are well illustrated in *Childs v. Brandon,* 1983, 60 N.Y.2d 927, 471 N.Y.S.2d 40, 459 N.E.2d 149. Plaintiff was a domiciliary of Alabama. He sued several New York residents on a cause of action that accrued in Alabama. The New York defendants moved to dismiss the action as barred under the Alabama statute. Because the defendants were invoking the foreign statute of limitations, the burden fell to them to demonstrate that it had expired. Alabama, however, like New York, created a toll of the statute of limitations for defendants who were absent from Alabama during the period when an action could have been commenced against them. Accordingly, part of the defendants' burden included proving that they were in Alabama with sufficient regularity that service of process could have been made upon them.

Proof of these various elements almost invariably involves questions of fact. As both the *Childs* and *Katz* case, *supra,* indicate, summary judgment is rarely the correct vehicle by which to resolve these questions.

Commentary to N.Y.C.P.L.R. § 202 at 110–11 (McKinney 1990).

In the case at bar, MasterCard International has shown that plaintiff is not a resident of New York, that the cause of action accrued outside of New York, and that the foreign period of limitations has expired. It has not shown that the foreign court has jurisdiction over it. Although the Commentary suggests that this burden may be the defendant's, it does not explicitly assign this particular burden.

One New York case does, however. In *Rescildo by Rescildo v. R.H. Macy's,* 155 A.D.2d 379, 548 N.Y.S.2d 164, 165 (1989), the court reversed the lower court's granting of summary judgment in favor of defendants who had relied on Connecticut's statute of limitations:

> The IAS Court erred in ruling, as a matter of law, that the defendants were amenable to suit in Connecticut during the statute of limitations period. The record reveals that the defendants' evidence in this regard was woefully inadequate.... Thus, the issue of the amenability of these defendants to suit pursuant to Connecticut's long-arm statute, Conn.Gen.Stat.Anno. § 33–411, and attendant due process concerns was not conclusively established. Also critical in this case, and to be determined in accordance with the jurisdictional matter, is the related issue of whether Connecticut's toll for absence from the state, Conn.Gen.Stat.Anno. § 52–590, applies to the defendants.
>
> *These are threshold matters that must be resolved before defendants may invoke the Connecticut time bar pursuant to New York's Borrowing Statute, CPLR § 202. See Childs v. Brandon,* 60 N.Y.2d 927, 929, 471 N.Y.S.2d 40, 459 N.E.2d 149; *Katz v. Goodyear Tire and Rubber Company,* 737 F.2d 238, 243.

548 N.Y.S.2d at 165 (emphasis added).[7]

The question, then, is whether the case at bar is governed by the two federal cases—*Grosser* and *Arneil*—or the two state cases—*Childs* and *Rescildo.*[8] It is

---

**7.** The Appellate Division remanded the case for a determination on the jurisdiction question. The lower court then denied jurisdiction which was affirmed in *Rescildo v. Fabil Manufacturing,* No. 37930, 1992 WL 75210 (App.Div. April 14, 1992). That decision was, in turn, vacated on May 5, 1992. (See *Id.*)

**8.** *Katz* may be positioned with either line of cases. On the one hand, its ultimate conclusion places the burden of proof on the party relying on the foreign statute, suggesting it belongs with

true that this is a motion for summary judgment, and all doubts should be resolved in favor of the non-moving party. But this is a question of law; I cannot and will not resolve the tension on procedural grounds.

I am persuaded that New York law places the burden on the defendant. While reconciling these cases seems futile, I am mindful that a federal court sitting in diversity must apply the law of the forum state. The most recent court to speak on the matter was the New York court in *Childs*, and that court assigned the burden to the defendant. It would be error for me to do otherwise.[9]

Accordingly, since defendant has failed to make a *prima facie* showing that MasterCard International could be sued in Massachusetts, I apply New York's six-year statute of limitations. Under New York law, a cause of action in negligence accrues "when [the] acts or omissions constituting negligence produce injury." *E.g., Triangle Underwriters Inc. v. Honeywell, Inc.*, 604 F.2d 737, 744 (2d Cir.1979). The alleged injury in this case accrued on January 29, 1988, the date of the breach of contract. Six years from that date is January 29, 1994, so plaintiff's second cause of action is not time-barred.

## B. The Third Cause of Action

Plaintiff's time had expired on the fraudulent inducement claim under New York law. Hence, I do not borrow Massachusetts law. Under N.Y.C.P.L.R. § 213(8) (McKinney 1990), the period of limitations for fraud is six years from the cause of action or, under N.Y.C.P.L.R. § 203(f) (McKinney 1990), two years from the discovery of the fraud.

The date of the fraud appears in plaintiff's complaint: "[o]n or about May 21, 1985, the defendants fraudulently induced plaintiff to enter into a contract to purchase ... Airline Tickets." Complaint,

¶ 17. *See also Ply*Gem of Laurel, Inc. v. Lee*, 91 A.D.2d 513, 456 N.Y.S.2d 382, 383 (1982) ("A cause of action for fraud in the inducement of a contract accrues at the time of the execution of the contract...."). The date of discovery was January 29, 1988, the date of the breach. The limitations period either expired on May 21, 1991 or January 29, 1990. Since plaintiff did not file his complaint until November 6, 1991, his time expired under either scenario.

### 3. Failure to State a Claim

MasterCard International next argues that the second and third causes of action should be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. (applying Rule 56 analysis as in Rule 12(c) motion practice). Since I have already held that the third claim is time-barred, I need not consider this argument as to the fraudulent concealment action.

■ As to the negligence claim, defendant claims that "[i]t is well-settled in New York that a breach of contract does not give rise to an action in negligence 'unless the promisor undertakes to perform the duty assumed in the contract.'" (citing *Rozner v. Resolute Paper Products Corp.*, 37 A.D.2d 396, 326 N.Y.S.2d 44, 46 (1971), *aff'd*, 31 N.Y.2d 934, 340 N.Y.S.2d 927, 293 N.E.2d 94 (1972)). The plaintiff acknowledges that the defendant did not perform under the contract. Complaint, ¶ 11. Therefore, defendant asserts, the negligence claim must be dismissed. *See World Trade Knitting v. Lido Knitting*, 154 A.D.2d 99, 551 N.Y.S.2d 930, 934–35 (1990); *F.W. Woolworth Co. v. Southbridge Towers*, 101 A.D.2d 434, 476 N.Y.S.2d 299, 302 (1984).

Plaintiff's only response to this argument is that he needs more discovery. But his request is conclusory; he offers no reason why discovery will enable him to

---

the state cases. On the other hand, the Second Circuit reached this conclusion only after noting that § 202 generally assigns the burden of proof to the party opposing the foreign statute, and only after explaining that the facts implicated the burden-bearing principles of domicile law.

9. Of course, this holding is without prejudice to a renewed motion upon a showing of jurisdiction.

plead a legitimate negligence claim. Indeed, given the gravamen of his complaint, no such reason appears to exist. Defendant's motion to dismiss the negligence cause of action is therefore granted.

## CONCLUSION

For the reasons stated above, the motion to dismiss is granted as to defendants Maryland Bank and MNC. As to defendant MasterCard International, the motion is denied as to count one and granted as to counts two and three.

It is SO ORDERED.