BICICLETAS WINDSOR, S.A., Plaintiff,

v.

BICYCLE CORPORATION OF AMERICA, Defendant.

No. 90 Civ. 7793 (CSH).

United States District Court, S.D. New York.

Jan. 27, 1992.

Berger Steingut Tarnoff & Stern (Peter R. Stern, Jonathan A. Olsoff, of counsel), New York City, for plaintiff.

Conway & Ceriello (Darrell J. Conway, of counsel), Melville, N.Y., for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This diversity case is before the Court on defendant's motion to dismiss for lack of personal jurisdiction and improper venue under N.Y.C.P.L.R. § 301 and 28 U.S.C. § 1391. Alternatively, the defendant moves to transfer the action to the Eastern District of Pennsylvania pursuant to 28 § U.S.C. 1404.

Plaintiff cross-moves to vacate the Court's prior vacatur of default judgment because of defendant's failure to answer the original complaint. In the alternative, plaintiff moves for attorney's fees and costs incurred in filing for the default judgment.

## BACKGROUND

Plaintiff Bicicletas Windsor, S.A. ("BWS") is a manufacturer of bicycle frames with its principal place of business and sole plant in Naucalpan, Mexico. Defendant Bicycle Corporation of America ("BCA") is a manufacturer of bicycles with its principal place of business in Bethlehem, Pennsylvania.

The action arises out of a contract for the sale and delivery of bicycle frames. The plaintiff claims that the defendant breached by failing to pay for the frames. While BCA does not deny its failure to pay, it argues that BWS failed to deliver the frames by the date specified in the contract and that, even when BWS finally did make delivery, the frames were defective.

BWS filed and served its original complaint on the defendant on December 10, 1990. When BCA failed to reply, BWS moved for default. The Court granted the motion on January 9, 1991 and the Clerk entered the judgment the next day in the amount of $106,782.44.

BCA then moved by Order to Show Cause on February 20, 1991 to vacate the default judgment and dismiss the complaint for lack of jurisdiction. When BWS failed to appear by the return date of February 22, 1991, the Court entered an Order vacating the default judgment under Rule 60(b)(1), Fed.R.Civ.P., but withheld judgment on the jurisdiction issue.

BWS now moves to reinstate the default judgment and, alternatively, for attorney's fees and costs. It also opposes defendant's motion to dismiss. For the reasons stated below, I deny defendant's motion to dismiss for lack of personal jurisdiction and improper venue. I deny plaintiff's motion to reinstate the default but grant its motion for attorney's fees. I also grant defendant's motion to transfer the case to the Eastern District of Pennsylvania.

## DISCUSSION

### *Jurisdiction*

■ In order to defeat a motion to dismiss for lack of personal jurisdiction brought after discovery, plaintiff must make a prima facie showing of facts that, if credited by the trier of fact, would suffice to establish jurisdiction over the defendant. *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F.Supp. 113, 115 (S.D.N.Y.1991) (citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990)). Bare allegations of jurisdiction will not suffice where, as in this case, discovery has taken place. *Id.*

■ In the case at bar, the defendant argues that its headquarters and plant are

in Pennsylvania, that it does not reside in New York, and that the transaction at issue did not occur in New York. BCA asserts further that "plaintiff has failed to offer a scintilla of proof that BCA is conducting business within the Southern District." Defendant's Memorandum in Support of Motion to Dismiss ("Def. Reply Brief") at 5.

BWS contends that BCA was "doing business" under CPLR § 301 and was therefore subject to jurisdiction in New York, even if the cause of this action did not arise in New York.[1] While the statute itself provides only that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore," courts have construed it to include foreign corporations who are doing business in the *"traditional sense." See Ball, supra,* 902 F.2d at 198 (citing *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967)) (emphasis in original).

In the case at bar, plaintiff claims several factors demonstrate that BCA is "doing business" in New York. First, BCA solicits business in the state on a regular basis. In discovery the defendant produced a list of 270 New York companies that it uses to target promotional mailings, catalogs and telephone marketing. Plaintiff's Memorandum in Support of Vacatur ("Plaintiff's Brief") at 9; Affidavit of Jonathan A. Olsoff ("Olsoff Aff."), Exhibit B; Deposition of Robert Andrew Ehrlich ("Ehrlich Dep.") at 14–16. BCA has hired a "territorial manager" to represent the company in

the New York City metropolitan area,[2] and the BCA sales manager occasionally accompanies her on sales calls. Ehrlich Dep. at 35. BCA also solicits business in New York by purchasing advertisements in journals distributed in New York. *Id.* at 25. These advertisements appear four to six times a year in at least three nationally distributed magazines, including *American Bicyclist and Motorcyclist, Bicycle Business Journal* and *Bicycle Dealer Showcase. Id.* One of these magazines, *American Bicyclist and Motorcyclist,* is itself located in New York. Olsoff Aff., Exhibit D.

In addition to soliciting business in New York, the defendant also has commercial and financial dealings of its own here. BCA has purchased 8,000 to 10,000 kickstands from a New York company in each of the last two years, and has purchased bicycle parts from two other New York companies during the same period.[3] Olsoff Aff., Exhibit E; Ehrlich Dep. at 29–32.

These facts are enough to satisfy the "doing business" standard of § 301. As now Circuit Judge McLaughlin wrote in the Commentary to the CPLR:

It is clear ... that the doing business test does not require the primary activities of the defendant to be carried on in this state. *It is sufficient that the foreign corporation has an agent or employee who solicits business in New York systematically,* and who devotes a major portion of his time to promoting the business interests of the defendant. *Solicitation of business alone may not be sufficient to constitute doing busi-*

---

**1.** Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits.

**2.** The company announced her hiring in the Bicycle Business Journal, a nationally-distributed trade publication:

BICYCLE CORPORATION OF AMERICA (BCA) has appointed Elizabeth Giaquinto as territorial manager for New York City's metropolitan area. She'll cover Manhattan, Long Island, Westchester, and Rockland County south of Rte. 287.

Olsoff Aff., Exhibit C; *see also* Ehrlich Dep. at 8.

**3.** Defendant responds by arguing that "the first and foremost fatal aspect of [this] argument is that the manufacturers are not located in the Southern District.... The basis for jurisdiction must arise from activity within the judicial district not the entire state." Def. Reply Brief at 6.

This is simply a misstatement of the law. Personal jurisdiction over a defendant is dependent on contacts within the state, not within the district where the federal court sits.

*ness; but solicitation plus additional business activities related to the defendant's operative or financial structure usually satisfies the test. See Elish v. St. Louis Southwestern Ry. Co.,* 1953, 305 N.Y. 267, 112 N.E.2d 842; *Scanapico v. Richmond, Fredericksburg & Potomac R. Co.,* C.A.N.Y.1970, 439 F.2d 17, affirmed en banc 439 F.2d 25.

*While it is settled that "mere solicitation" of business in this state is not sufficient to constitute "doing business," and that something more is required, it is clear from the cases in recent years that the something "more" has become very little else.* The rule has been further diluted by a major decision of the Court of Appeals [*Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)] that if the corporation doing the solicitation in New York is different from the corporation on whose behalf the solicitation is done, them [sic] mere solicitation may be sufficient to find that the soliciting company is doing business.

CPLR § 301, at 9–10 (McKinney 1990) (emphasis added).

The defendant's activities fit neatly into this "solicitation-plus" scheme. BCA's business plan includes an active campaign to sell bicycles to New York retailers, and it also purchases parts from New York suppliers. It therefore must be considered to be doing business here even if the subject of this action did not involve New York. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is denied.

### Venue

The defendant also moves to dismiss on the grounds of improper venue. BCA asserts that 28 U.S.C. § 1391(a) requires that the defendant be resident within the Southern District of New York in order for this Court to serve as venue. Because BCA is not a resident of this district, the defendant asserts that venue is improper.

Defendant gives no indication, however, that it recognizes the significance of subsection (c) of 28 U.S.C. § 1391. Both (a) and (c) are implicated in the case at bar.

Section 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

Section 1391(c) provides:

For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State,* and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

(emphasis added).

As § 1391(c) demonstrates, defendant is a resident of a judicial district if it is subject to personal jurisdiction there. BCA would thus appear to reside in the Southern District because, as I have discussed, *supra,* the requirements of personal jurisdiction have been met.

New York, however, has more than one judicial district. According to § 1391(c), then, BCA is a resident of the Southern District only if its contacts would be sufficient to subject it to personal jurisdiction if the Southern District were a separate state. This requires a hypothetical analy-

786

sis of personal jurisdiction confined to the Southern District.

 In undertaking a jurisdictional analysis under 28 U.S.C. § 1391, courts apply federal law, not New York law. *PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F.Supp. 1218, 1222 (S.D.N.Y.1979) (" '[w]hat constitutes 'doing business' for purposes of venue is governed by federal law, even though, in a diversity case, it is state law which determines whether a corporation is 'doing business' in the state for purposes of jurisdiction.' ") (citations omitted); *Sterling Television Presentations, Inc. v. Shintron Co.*, 454 F.Supp. 183, 189 (S.D.N.Y.1978) ("[w]hile jurisdiction over the person is determined according to state law, venue is a question of federal law."). This, in turn, implicates the "minimum contacts" analysis articulated by *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny: *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *World–Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); and *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The crucial question is whether BCA has purposely availed itself "of the privilege of conducting activities within the forum state [in this case, the forum district], thus invoking the benefits and protection of its laws." *Hanson, supra*, 357 U.S. at 253, 78 S.Ct. at 1240. If BCA has purposely availed itself of this privilege, then venue can lie in the Southern District.[4]

 As already discussed, *supra*, BCA actively solicits business in New York state, and in areas which encompass the Southern District. While the bicycle parts that BCA purchases in New York state are manufactured outside the Southern District, the federal jurisdiction test does not require the "solicitation-plus" scheme of

New York. When the cause of action does not arise from the defendant's contacts with the forum state, jurisdiction must be predicated on contacts sufficiently continuous and systematic to justify haling the defendant into court. *World–Wide Volkswagen, supra*, 444 U.S. at 297, 100 S.Ct. at 567. Solicitation alone may or may not be enough.

 Although it is a close call, the Court views BCA's contacts in the Southern District as sufficient for the purposes of 1391(c). The defendant solicits business here in a systematic, continuous fashion. While BCA's activities in this district may not be enough under New York's jurisdictional tests, the federal jurisdictional standard is less stringent and compels a different result. BCA has purposely established minimum contacts such that the assertion of personal jurisdiction would not offend "traditional conceptions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment." *Burger King, supra*, 471 U.S. at 464, 105 S.Ct. at 2177 (citing *International Shoe, supra*, 326 U.S. at 320, 66 S.Ct. at 160). Therefore, venue is proper in this court. Defendant's motion to dismiss is denied.

### Vacating the Vacatur of Default

 Plaintiff moves to reinstate the default judgment for failure to answer. BCA counters with two arguments. First, BCA claims that the default was entered prematurely and, second, it claims that its failure to answer was justifiable on the grounds of excusable neglect.

Defendant's first argument relies on Rule 4(e) of the Federal Rules of Civil Procedure. This rule provides that when service is made pursuant to a state statute on a party not served within that state, "service may be made under the circumstances and in the manner prescribed by the statute. . . ." BCA contends that it should have had 30 days to respond to the

---

**4.** Although some courts had applied different tests prior to Congress' 1988 amendment of 28 U.S.C. § 1391(c), the test for determining a corporation's residence for venue purposes is the same as for personal jurisdiction purposes. C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure: Jurisdiction* § 3811, at 21 (2d ed. 1991) (citations omitted).

plaintiff's complaint because that is the period specified under CPLR 301 and 313. BCA alleges that the Court entered the judgment prematurely on January 9, 1991.

Plaintiff asserts that the summons and complaint were served under Rule 4(c)(2)(C)(i) and not Rule 4(e). If service was validly made under that subsection, defendant had only 20 days to answer, not 30, see Rule 12(a), and was clearly in default.

I need not resolve that issue, however, because the default judgment was entered January 10, 1991, not January 9. That would satisfy even the 30–day calculation of BCA, which allows for entry of default at any time on or after January 10. Defendant's Memorandum to Dismiss ("Def. Brief") at 3 ("BCA's time to answer ... did not expire until 12:01 A.M., January 10, 1991.").

Defendant's second argument requires analysis of Rule 60(b). That rule states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.... The motion shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken.

As commentators have observed, Rule 60 is strongest in the context of setting aside defaults:

> The cases calling for great liberality in granting Rule 60(b) motions, for the most part, have involved default judgments. There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits.

Standard Enterprises, Inc. v. Bag-it, Inc., 115 F.R.D. 38, 39 (S.D.N.Y.1987) (citing C. Wright & A. Miller, 11 Federal Practice and Procedure: Civil § 2857, at 160 (1973) (footnote omitted)). The Second Circuit has further held that " '[t]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort,' which should only be imposed 'upon a serious showing of willful default.' " Davis v. Musler, 713 F.2d 907, 916 (2d Cir.1983) (citations omitted).

With these principles in mind, the Second Circuit has established a three-part test to determine whether the standards of 60(b)(1)—"mistake, inadvertence, surprise, or excusable neglect"—have been satisfied in the context of default judgments. Courts examine whether the default was willful, whether the defendant has a meritorious defense, and how much prejudice may result to the non-defaulting party if relief is granted. Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir.1984); Davis, supra, 713 F.2d at 915.

In the case at bar, defendant BCA claims excusable neglect. According to the affidavits of BCA vice president Robert Ehrlich and BCA counsel Joel Wiener, the defendant failed to respond to the BWS complaint and summons because of misunderstandings between employees and counsel. Ehrlich states that his employees gave the complaint and summons to Wiener several days after the December 10, 1990 service of the complaint; that Ehrlich told Wiener that service was accomplished by mail, not by hand; that Ehrlich heard nothing more until he received the application for entry of default on or about January 9, 1991; and that he immediately telecopied the application for default to Wiener. Affidavit of Robert Ehrlich ("Ehrlich Aff.") at 7–8.

Wiener states that he learned of the complaint from Ehrlich on December 12, 1990; that he subsequently contacted local counsel in New York, Conway & Ceriello, so that BCA could respond properly; that he told local counsel that service was made my mail; and that it was only after he received the default papers from Ehrlich on January 9, 1991 that he determined that service was made by hand, not mail. Affidavit of Joel Wiener ("Wiener Aff.") at 1–2. Wiener states further that he immediately transmitted these documents to local counsel. When he and local counsel spoke the next day, they determined that they should

move to vacate the default judgment. *Id.* at 2–3.

Six weeks later, defendant moved to vacate the default judgment by Order to Show Cause. Plaintiff's counsel apparently misread these papers and failed to appear—an ironic turn of events, given their present resistance to defendant's claims of neglect—and the Court vacated the judgment on February 22, 1991. The Court is now asked to vacate that vacatur itself, thus reinstating the original default judgment.

Applying the three-part test, I decline to reinstate the default judgment because there is no evidence that BCA's default was willful. It is true that both BCA's general and local counsel failed to file a timely answer and apparently also failed, at least initially, to determine the plaintiff's method of service. The defendant suggests that it was thus confused as to the amount of time it had to respond.

Most troublesome is BCA's delay in waiting six weeks before moving to set aside the default. One would, and should, expect more prompt action from attorneys whose client had just been defaulted for more than $100,000.00. BCA does not account for this delinquency nor even acknowledge that it should have acted with more urgency. This is a glaring omission. When plaintiff characterizes BCA's conduct on this score as "remarkable," it does not overstate the case.

Nevertheless, while BCA's actions are to be condemned as inattentive and negligent, the Court is not prepared to call the default "willful." BCA certainly did not act with dispatch at any stage of this case. When deciding whether to hold a defendant in default, however, the standard the Court must apply is not carelessness, but willfulness. I am not prepared to say that BCA committed a willful default, particularly given the admonition that "all doubts should be resolved in favor of those seeking relief under Rules 55(c) and 60(b)." *Davis, supra,* at 915 (citations omitted).

The second prong of the test, the existence of a meritorious defense, also works in BCA's favor. While the plaintiff has sued BCA for failure to pay, BCA alleges that BWS breached the contract by delivering the bicycle frames late and by delivering defective goods. The defendant's evidence includes letters expressing BCA's dissatisfaction with the frames, and pleas for replacement parts. Order to Show Cause, Exhibits E and F. These records are dated months before BWS initiated its suit. *Id.* While it cannot now be said that the plaintiff actually breached the contract, defendant has made a sufficient showing of a meritorious defense to justify further proceedings. No other conclusion is possible considering that "a defendant seeking to vacate a default judgment need not conclusively establish the validity of the defense(s) asserted...." *Davis, supra,* at 916.

As for the third prong of the test, plaintiff does not contend that it would be substantially prejudiced if the default judgment remained vacated, nor do I detect any reason why BWS could make such a claim. Some delay, to be sure, has resulted from the Court vacating the default judgment. But the delay caused by reopening a judgment does not itself constitute prejudice. *Id.* Rather, it must be shown that delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (citing C. Wright, A. Miller and M. Kane, 10 *Federal Practice and Procedure: Civil,* § 2699, at 536–37 (1983)); *see also Kumar v. Ford,* 111 F.R.D. 34, 39 (S.D.N.Y.1986). Plaintiff has made no such claim here. Accordingly, BWS has failed to show that it would be prejudiced.

Because the defendant's default was not clearly willful, the defendant has a potentially meritorious defense and there is no prejudice to the plaintiff, the motion to vacate the vacatur of default judgment is denied. But because BCA's negligence was the cause of the entry of default in this case, BCA must bear the costs incurred because of the default. *See, e.g., Pro Tect Management Corp. v. Worley,* No. 89 Civ. 3026, 1991 WL 190582, at *4

(S.D.N.Y. Sept. 18, 1991); *Kumar, supra,* at 39; *Roundball Enterprises, Inc. v. Richardson,* 99 F.R.D. 174, 177 (S.D.N.Y. 1983); *see also* F.R.Civ.P. 60(b) (authorizing relief "upon such terms as are just.").

### Transfer

■ Defendant has moved to transfer this case to the Eastern District of Pennsylvania. Under 28 U.S.C. § 1404, the Court has the power to transfer the case if it would be in the interest of justice.[5]

While plaintiff's choice of venue is usually accorded substantial weight in assessing a defendant's motion to transfer, it is given less weight when the facts giving rise to the litigation bear little connection to the chosen forum. *E.g., Arrow Electronics, Inc. v. Ducommun Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989); *Nieves v. American Airlines,* 700 F.Supp. 769, 772 (S.D.N.Y. 1988). Such is the situation in the case at bar.

The most significant factor to be considered by a court contemplating transfer is the convenience of the party and nonparty witnesses. *Nieves, supra,* at 772. The contract at issue in this case was negotiated at BCA's headquarters in Bethlehem, Pennsylvania. The bicycle parts delivered by BWS are now housed at BCA's warehouse in Pennsylvania. The essential witnesses either reside in Pennsylvania or at BWS headquarters in Mexico. Given these facts, it would be more convenient and less costly for the case to be tried in Pennsylvania. Defendant's motion to transfer is therefore granted.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss for lack of jurisdiction and improper venue is denied. Plaintiff's motion to vacate the vacatur of default is also denied, although plaintiff's motion for attorney's fees is granted. Defendant's motion to transfer the case to the Eastern District of Pennsylvania is granted. Plaintiff is directed to submit an affi-

davit, documentation, and statement of attorney's fees within twenty-one (21) days of the date of this order. When the Court determines the appropriate amount of those fees, the Clerk of the Court will be directed to dismiss the case and transfer it to the Eastern District of Pennsylvania.

It is SO ORDERED.

---

**5.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.